**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: August 13, 2019
Date Decided: August 19, 2019

Philip Trainer, Jr., Esquire
Marie M. Degnan, Esquire
Aaron P. Sayers, Esquire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

Brock E. Czeschin, Esquire
Susan M. Hannigan, Esquire
John M. O'Toole, Esquire
Tyre L. Tindall, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Re: *Eric Gilmore v. Turvo, Inc.*
C.A. No. 2019-0472-JRS

Dear Counsel:

This letter opinion resolves Plaintiff's Motion to Compel in which Plaintiff seeks to compel Defendant, Turvo, Inc. ("Defendant" or "Turvo"), to produce attorney-client privileged communications between Latham & Watkins, LLP ("Latham") and Turvo's Preferred Directors,[1] officers or employees that occurred any time prior to a May 21, 2019 meeting where the Turvo board of directors

---

[1] The Preferred Directors are Ibrahim Ajami, Wesley Chan and Steven Sarracino.

(the "Board") purported to remove Plaintiff as Turvo's CEO.[2]  For the reasons stated

below, the motion is denied.

## I.  BACKGROUND

Plaintiff, Eric Gilmore, is the co-founder and majority shareholder of Turvo

and has served as Chief Executive Officer of the company since its inception.[3]

During the relevant time period, Turvo's Board consisted of four members—

Gilmore, Ajami, Chan and Sarracino.[4]

In May 2019, during a review of expenses charged to company credit cards,

Turvo's Chief Financial Officer discovered that Mr. Gilmore had used his card to

expense at least $125,000 in entertainment charges, including (allegedly) $76,120

---

[2] Pl.'s Mot. to Compel ("POB") (D.I. 38).  I granted the remainder of this motion in a bench ruling on August 13, 2019, ordering the fact depositions of certain Latham attorneys (regarding non-privileged information) and the production of non-privileged documents responsive to Plaintiff's discovery requests in the custody of Latham.

[3] *Id.* ¶ 1.  I draw the facts from the submissions relating to the Motion to Compel. I acknowledge that Plaintiff disputes the allegations of wrongdoing that have been asserted against him and that the resolution of that dispute, if relevant, awaits another day.

[4] Def. Turvo, Inc.'s Opp'n to Pl.'s Mot. to Compel ("DAB") (D.I. 47) ¶ 4.

paid to adult entertainment venues.[5]  The CFO alerted Chan to the charges, who then notified Ajami and Sarracino.[6]

Seeking advice on how to proceed in light of the alleged misconduct of one of their fellow Board members, the Preferred Directors turned to Latham instead of the Board's long-time counsel, Gunderson Dettmer Stough Villeneuve Franklin & Hachigan, LLP.[7]  Latham had previously served as counsel for Activant, a Turvo preferred stockholder, and had never represented Turvo or the Board.[8]  In the following weeks, with Latham's guidance, the Preferred Directors reviewed the information relating to Mr. Gilmore's alleged misconduct, assessed the impact the misconduct had or would have on Turvo's business and considered how to respond.[9]

On May 21, 2019, the Preferred Directors, Mr. Gilmore, counsel for Mubadala Ventures (a preferred stockholder) and four Latham attorneys attended a meeting at

---

[5] *Id.* ¶ 5.

[6] *Id.* ¶ 6.

[7] *Id.*

[8] *Id.*

[9] *Id.* ¶ 7.

Ajami's office in San Francisco.[10] After explaining that the purpose of the meeting

was to address Mr. Gilmore's alleged misconduct, it is alleged that Sarracino asked

Mr. Gilmore to recuse himself from the meeting.[11]  In Mr. Gilmore's absence, the

Preferred Directors removed Mr. Gilmore as CEO and adopted a resolution retaining

Latham as counsel for the Board "effective as of May 10, 2019."[12]  According to

Defendant, the resolution's retroactive language was intended to allow Turvo to pay

the legal fees incurred by the Preferred Directors prior to the May 21 meeting.

Mr. Gilmore contends that, as a member of the Board during Latham's

engagement by other members of the Board, he is entitled to access Latham's

privileged communications with the Preferred Directors and any Turvo officers or

employees.[13]  While he acknowledges the Board did not formally engage Latham

---

[10] *Id.* ¶ 9.  I make no determination regarding the validity of this meeting, nor do I draw any conclusions about the facts in dispute relating to this meeting.

[11] *Id.* ¶ 10.

[12] *Id.*; DAB, Ex. 1 at TURVO-00002112.

[13] POB ¶ 1.

prior to the May 21 meeting, Mr. Gilmore asserts that Latham functionally served as counsel to the Board by advising the Preferred Directors.

In support of his position, Mr. Gilmore points out that the plain language of the May 21 resolution makes clear that Latham's service to the Board began on May 10 and gives no indication that the purpose of backdating the resolution was to clarify billing protocols as Defendant now suggests.[14] He maintains that contemporaneous email communications as well as deposition testimony indicate that the Preferred Directors believed Latham was acting as counsel to the Board. Specifically, Mr. Gilmore cites an email dated May 22, 2019, in which Sarracino told a Turvo investor, "***The board*** worked around the clock for the last two weeks to fix what was an extremely unfortunate situation."[15] Chan's recent deposition testimony also purportedly reveals that the Preferred Directors did not retain counsel

---

[14] Pl.'s Reply in Supp. of His Mot. to Compel (D.I. 52) ¶ 2.

[15] *Id.*, Ex. 1 (emphasis supplied).

prior to the May 21 meeting, that Latham did not represent Chan personally and that Chan and Ajami each had their own counsel.[16]

Finally, Mr. Gilmore argues that Latham made certain representations that reveal its role as counsel to Turvo and the Board. For example, in the minutes from the May 21 meeting, which Latham drafted, Latham characterized its work as conducting an "internal investigation."[17] Additionally, in an email to Mr. Gilmore dated May 22, 2019, Latham's Joseph B. Farrell referred to himself "as counsel to the Special Committee of the Board of Directors," even though that committee was not formed until May 23, 2019.[18]

## II. ANALYSIS

Having carefully reviewed Mr. Gilmore's proffered evidence, I see no basis to conclude that Latham served as counsel to the Board before the May 21 Board meeting such that Mr. Gilmore should be given access to the privileged

---

[16] Chan. Dep. Tr. 32:7–9; 32:20–22; 32:23–24; 93:3–4; 93:5–6; 92:23–93:2.

[17] DAB, Ex. 1 at TURVO-00002112.

[18] POB, Ex. C.

communications between the Preferred Directors, the preferred stockholders and their chosen counsel. Without this predicate attorney-client relationship between Latham and the Board, Mr. Gilmore is an outsider to the relationship and has no right to pierce or otherwise enter it.

As a general matter, a Delaware corporation "cannot assert the privilege to deny a director access to legal advice furnished to the board during the director's tenure."[19] Mr. Gilmore correctly acknowledges three exceptions to the rule, and argues that because none of them applies, he is entitled to discover the disputed communications.[20] But there is an important condition to Mr. Gilmore's purported entitlement: that Latham's legal advice be "furnished *to the board*."[21] Indeed, in *Moore*, the court permitted the plaintiff-director access to disputed communications because:

---

[19] *Moore Bus. Forms, Inc. v. Cordant Hldgs. Corp.*, 1996 WL 307444, at *4 (Del. Ch. June 4, 1996) (citations omitted); *accord Kalisman v. Friedman*, 2013 WL 1668205, at *4 (Del. Ch. Apr. 17, 2013).

[20] POB ¶ 8–9 (quoting *Kalisman*, 2013 WL 1668205, at *5).

[21] *Id.*

> The client in this case is the Holdings board.  Mr. Rogers was a member of that board, having the same status as the other directors.  No basis exists to assert the privilege against him . . . .[22]

In contrast, the court in *SBC Interactive, Inc. v. Corp. Media Partners* held that a general partner seeking to withdraw from the partnership had no reasonable expectation that it was a client of the partnership's in-house counsel.[23]

In each of the decisions Mr. Gilmore cites in support of his claim that he is entitled to access otherwise privileged information, the courts made clear in the privilege analysis that the counsel from whom privileged information was sought represented the board.[24]  In other words, the courts made clear that the director seeking the privileged information had a reasonable expectation that the attorney(s) in question were representing all members of the board.  Mr. Gilmore fails to make that showing here.  There was no act by the Board to hire Latham as Board counsel prior to the May 21 meeting.  Nor is there any indication that Latham had agreed to

---

[22] *Moore*, 1996 WL 307444, at *6.

[23] 1997 WL 770715, at *5 (Del. Ch. Dec. 9, 1997).

[24] *See, e.g.*, *Moore*, 1996 WL 307444, at *5; *SBC Interactive*, 1997 WL 770715, at *4; *Kalisman*, 2013 WL 1668205, at *4.

represent the Board prior to that meeting. Offhand comments from the Preferred Directors in which they express some confusion over Latham's pre-May 21 role are not sufficient to allow Mr. Gilmore to insert himself within the privilege domain. Nor am I persuaded that the May 21 Board resolution undermines the nature of Latham's initial representation. Assuming the Board was authorized to make any resolutions at the May 21 meeting, it was entirely within its business judgment to determine that the company should pay the Preferred Directors' fees by deeming Latham to have been working on behalf of the company prior to May 21 as it aided in the investigation of potential wrongdoing by the CEO.[25]

What the record does reveal is that Latham had a preexisting relationship with a preferred shareholder that led to its representation of that shareholder's designated director—a practice not uncommon among law firms and their longstanding

---

[25] Whether Turvo should pay for the legal services rendered prior to the May 21 meeting is a separate issue that I have not been asked to decide, although the issue may well resurface should Plaintiff prevail in this litigation.

corporate clients.[26]  That this preexisting relationship led Latham to provide advice to the other Preferred Directors who shared a common interest with Sarracino and Activant does nothing to undermine the claim of privilege or to inject Mr. Gilmore into the attorney-client relationship.[27]   Indeed, the Preferred Directors' aligned interests, and the separation of those interests from those of the common stockholder(s), is reflected in the "Amended and Restated Voting Agreement," whereby the parties agreed that the CEO and a Board member (Mr. Gilmore) would be appointed by the common stockholders and the Preferred Directors would each be appointed by Turvo's preferred stockholders.[28]  Thus, even before May 10, the Preferred Directors expressed amongst themselves and to Mr. Gilmore that they had common interests that might diverge from, or at least differ from, Mr. Gilmore's interest as a common stockholder and as the common stockholder's Board

---

[26] DAB ¶ 6.  I also note that this preexisting relationship gives me some comfort that the Preferred Directors did not set out to establish a backdoor to hiring Latham as Board counsel while shielding their communications from Mr. Gilmore.

[27] D.R.E. 502(c)(6).

[28] DAB ¶ 4.

designee.[29]  Those interests certainly did diverge *if*, as alleged, Mr. Gilmore as CEO

diverted substantial company funds to support his personal proclivities.

For the foregoing reasons, Mr. Gilmore's motion to compel is **DENIED**.

Very truly yours,

*/s/ Joseph R. Slights III*

---

[29] Of course, this is not to suggest that the directors' fiduciary duties differed or that all Board members were not expected to share a unified interest in acting for the best interests of Turvo and all its stockholders.  I simply note that the Amended and Restated Voting Agreement reflects that the different classes of stockholders appreciated that their interests may diverge depending on the circumstances.  *See generally, In re Trados, Inc. S'holder Litig.*, 73 A.3d 17, 42 (Del. Ch. 2013) (acknowledging the reality that the interests of common and preferred stockholders can diverge).